**D. I. JIMMERSON et al., Appellants,**

v.

**NORRIS FENCE COMPANY, Inc., Appellee.**

**No. 8096.**

Court of Civil Appeals of Texas, Texarkana.

May 30, 1972.

Rehearing Denied June 27, 1972.

Robert L. Fairchild, Fairchild, Hunt & Price, Center, for appellants.

J. R. Cornelius, Cornelius & Cornelius, Jefferson, for appellee.

CHADICK, Chief Justice.

This is a venue case. Norris Fence Company, Inc., a Texas corporation, instituted a suit in the District Court of Marion County, Texas, naming E. L. Bruce Company of Texas, a corporation, domiciled at Center, Shelby County, Texas, along with Robert H. Adams, Jr., and D. I. Jimmerson, as defendants. The fence company's trial pleading alleged that Adams and Jimmerson, "individually and while acting as agents and employees" of the Bruce corporation came to the fence company's mill yard and in the process of sorting and loading logs "negligently and carelessly caused" a load of logs being handled by a log loader "to swing around and strike" a gang saw that was stored nearby, knocking this machinery from the blocks where situated, crushing, bending and ruining certain of its parts. Prayer was for damages, costs and other appropriate relief.

By single instrument the three defendants filed a plea of privilege praying that the action be transferred to Shelby County, the residence respectively of each defendant. The fence company controverted the defendants' plea of privilege and asserted venue in Marion County, Texas, for trial of the action under the provisions of Vernon's Tex.Rev.Civ.Stat.Anno. art. 1995, Secs. 9 and 9a (1964). At conclusion of the recessed hearing on the plea of privilege the trial court sustained the plea as it pertained to the E. L. Bruce Company of Texas, but overruled the plea of Adams and Jimmerson. From the order overruling their plea of privilege, both Adams and Jimmerson have perfected an appeal. Separate consideration of each of the appealing parties will be made in the interest of clarity.

### Appeal of Robert H. Adams, Jr.

Points of error No. Three, No. Four, No. Six, No. Eleven, No. Twelve, No. Thirteen and No. Fourteen present for review, from the standpoint of Adams, no evidence and insufficient evidence questions relative to proof of a crime, offense or trespass in Marion County, Texas, and the same questions respecting negligence and proximate cause. After detailed examination of the statement of fact, no evidence is found that sustains the trial court's order as to Adams. Necessarily, appellant Adams' no evidence points are sustained and the judgment of the trial court is reversed as it pertains to him.

Something of a paradox develops in demonstrating the absence of evidence. What is absent is determined by showing what is present. In giving full measure, when a no evidence point is under consideration all evidence in the record must be repeated to demonstrate that vital evidence is not present. Though the statement of fact is not lengthy, a summary of all the evidence will not be made, as a satisfactory accounting seems possible without taking such course. Five persons testified at the plea of privilege hearing and extracts from the deposition of Adams, Jimmerson and two others were introduced. Of the five testifying in person none knew Adams, and consequently were unable to say whether or not he was present or a participant in events at the Norris Fence Company's mill yard on August 28, 1969, the date the gang saw was damaged. Mr. William G. Goodrich, logging superintendent for the Bruce corporation, testified that Mr. Adams was hauling for the Bruce corporation back in the summer at an unspecified time. Mr. Jimmerson as a witness admitted hauling logs for the Bruce corporation as an independent contractor on August 28, 1969, and that he hauled some logs from the Norris mill, making five or six trips. In connection with these trips he was questioned, and answered in this manner:

"Q. Un-huh. Now on the occasion . . ., you heard Mr. Adams say you had two trucks up here and a loader.

A. Yes, sir."

Adams testified as shown by this extract from his deposition:

"Q. All right. In August of 1969, who were you employed by?

A. I think the Bruce Company. I am not sure of the time. I don't remember.

Q. Well, o. k. Well, I'll ask you then, did you, together with Mr. Jimmerson make a trip up to the Norris Fence Company's saw mill west of Jefferson?

A. Yes, sir. We hauled some logs from there."

Adams' tenuous connection with the case is found in the foregoing summary of direct evidence relevant to Adams. Examination of all direct and circumstantial evidence in the record discloses a hiatus and failure in proof that Adams in person or by agent, servant or employee, or as a partner or joint adventurer became legally liable for

or participated in the events that led to the damage of the fense company's gang saw.

### *Appeal of D. I. Jimmerson*

The remaining points of error present identical questions from appellant Jimmerson's standpoint. The evidence is not controverted that Jimmerson undertook to and did load and haul logs from the fence company's mill yard on August 28, 1969. Two of the fence company's employees saw the log loader used in the loading operation by Jimmerson swing a load of logs into the out of service gang saw and dislodge it from its base and thereby damage it. The inquiry in this instance is limited to the question of no evidence or insufficient evidence to prove a crime, offense or trespass in Marion County, or to prove negligence and proximate cause in such county.

■ Although the evidence is sparse, it is sufficient to prove trespass. Jimmerson voluntarily used the log loader in his operation. The inference from the proven facts is that employment and operation of the log loader in sorting and loading logs was deliberate and intentional. The operational swinging of the load of logs that struck the gang saw was a part of the voluntary, deliberate, and therefore, intentional action Jimmerson carried out in damaging the machine. The gang saw was lawfully in place. The intrusion on it was forceful, immediate and direct. Molesting and damaging the gang saw was a violation of the fence company's property right. Damage to the machine gave rise to a cause of action. Whether or not Jimmerson or his employees were acting as an ordinarily prudent person would have acted under the same or similar circumstances is immaterial. Mountain States Telephone & Telegraph Company v. Vowell Construction Company, 161 Tex. 432, 341 S.W.2d 148 (Tex.Sup.1960). In the cited case, Judge Norvell said:

"The particular appellation or classification to be given the particular act is not of controlling effect. The important thing is that a property right was violated."

All modern authorities recognize that destruction, injury, or any unlawful interference, however slight, with the enjoyment by another of his personal property, is a trespass, warranting an action for damages. 56 Tex.Jur. Trespass, Sec. 3 (1964); 52 Am.Jur. Trespass, Sec. 10 (1944); 87 C.J.S. Trespass, §§ 8 and 9 (1954).

■ The fence company did not plead trespass as a theory of recovery in its trial petition; such theory was first injected in the controverting affidavit to the plea of privilege. Proof tending to establish the theory was admitted without objection. Under the record, any objection to such theory was waived, and the trial court was justified in trying the trespass issue outside of the pleadings. Tex.R.Civ.P. 67. It appears that the evidence is sufficient to prove a trespass occurred, the question of negligence, the application of the res ipsa loquitur doctrine, or proximate cause will not be explored.

The judgment of the trial court sustaining the plea of privilege as to Robert H. Adams, Jr., is reversed and judgment rendered that the action as it pertains to him be transferred to Shelby County, Texas. In all other respects, the judgment of the trial court is affirmed. The condition of the record is such that it appears equitable to tax costs as follows: Appellant Jimmerson pay one-half costs of trial court and this appeal, and Appellee Norris Fence Company, Inc., pay the other one-half thereof. It is so ordered.

DAVIS, J., not participating.

### ON MOTION FOR REHEARING

In a motion for rehearing, counsel for appellant Jimmerson reasserts inability to find evidence in the record tending to show appellant Jimmerson's tortious responsibil-

ity or connection with the log loading operation that damaged the gang saw.

The log loading operation and damage to the gang saw occurred on August 28, 1969. Mr. C. E. McGowan, Mill Manager for the Texas Fence Company, Inc., testified that two men came to the mill yard the day the gang saw was damaged to pick up and haul hardwood logs. One of the men came to him and talked about separating pine logs from hardwood logs. Mr. McGowan's testimony puts appellant Jimmerson on the ground at the mill on that day. His testimony also puts Jimmerson in supervision of the log loading operation. Some of his testimony in this connection follows, to-wit:

"Q. You know Mr. Jernigan, I will ask you whether or not Mr. Jernigan was one of the men that came up there? (sic)

A. Yes, Jimmerson was the one that talked to me.

Q. And you do know him?

A. Yes.

Q. I will ask you whether or not Mr. Jimmerson has been the one that came generally and hauled the logs off from there?

A. Yes, sir.

Q. Was the other man—did he generally come or do you know about that?

A. I don't know. I didn't pay much attention to the extra truck driver.

Q. But you do know Mr. Jimmerson generally comes and hauls the logs off for—the ones you sold to Dill back there?

A. Yes."

In his deposition, Jimmerson testified that he was hauling logs on August 28, 1969, on a contract basis. Without relating the haul to such date he acknowledged that he hauled some logs from the Norris mill west of Jefferson, and that he had two trucks and a log loader at the mill. His testimony in part follows:

"Q. How many loads did you make from there or how many trips?

A. I imagine five or six of them. I don't—couldn't say offhand just how many.

Q. Un huh. Now on the occasion— you have heard Mr. Adams say you had two trucks up there and a loader.

A. Yes, sir.

Q. Is that correct?

A. Right."

■ It is elementary that the trial judge as trier of the facts determines the credibility of the witnesses, the weight to be given the testimony, and reconciles contradictions or inconsistencies in the witnesses' testimony. In performing this function the judge may draw legitimate inferences from all the facts and circumstances in evidence. The evidence set out above, that alluded to in the original opinion as well as other testimony in the record, is sufficient to support the trial court's judgment with respect to appellant Jimmerson. Appellant Jimmerson's motion for rehearing is respectfully overruled.

DAVIS, J., not participating.